and Mr. Schacht, am I saying your name correctly? Yes, Your Honor. Mr. Schacht, you're reserved one minute for rebuttal. If you'll just give me one second. You may proceed when you're ready. Thank you, Your Honor. May it please the Court, my name is Alexi Schacht and I represent Juan Candelier Tejada in this appeal. I think the government and I agree on what the only question really is, which is whether my client's sentence was reasonable, specifically whether it was a reasonable sentence, not in the procedural sense because I think all the procedures were followed correctly, but it was substantively unreasonable in that it was simply too high given all of the factors in the case. And of course I'm well aware that this Court and courts in general do not like to second guess or overrule a court's judgment on what a defendant's sentence should be unless there has been some kind of clear error normally. However, I think the facts here are sufficiently unique that it warrants a resentencing. And the reason I say that is twofold. The first part of the argument is that my client received a sentence that was 12 times higher than two other people who are relatively similarly situated in the case. My client got about 12 and a half years and these two other people referenced in my brief got one year each. Obviously as I recognized at the initial sentencing, the factors here are drastically different in the two cases, but other than the fact that my client jumped bail and ran away and re-offended, essentially he should – He should take other than that. Yes, but his credits are extraordinary. Go ahead, Judge. I'm sorry, Judge. I was just saying details, details. Yes, but if you look at the details, he helped the government to arrest at least two, possibly up to four people. And when I say the government, I mean the local and federal government because one of the people was prosecuted in the state system. He helped them to seize handguns. He helped them to seize eight kilograms of heroin. And while it's true because he jumped bail, he was not available to testify at the trial, there is a benefit to the government, a benefit to society, presumably, since we've outlawed heroin, just the removal of eight kilos, which is a relatively large quantity of heroin, from the world, that is a benefit that he caused and he should have received some credit for that. Let me ask you a question that's generally about thinking about substantive reasonableness. So one of the exercises I engage in when I'm looking at substantive reasonableness is what was the range of sentences available to the sentencing court and where did this one fall? So I'm not as worried about the one month below the bottom of the guidelines, but this is a 10 to life charge, right? And your client got, what, 12 and a half years? Yes. And so, sort of, how do I put that in perspective in the sense that you're saying, well, he got 12 times as much as some folks you believe are similar, but he had to get 10 times as much, right? No, he didn't have to get 10 times. Is it not a man-min? It is a mandatory minimum case, you're correct, but because of the facts of the case, he was safety valve eligible. So the safety valve would have broken the mandatory minimum. So theoretically, and I wasn't arguing for this, obviously, he could have gotten a year in jail. Obviously, the government was asking for more than the minimum. The judge ended up giving him one month less, I think, than the bottom of the sentencing guidelines. But the crime, and the government and I disagreed about this, because I had said at the oral argument in the district court that I thought that the case was, relatively speaking, not that large of a drug case. And what I meant by that was, under the types of cases that happen in this courthouse, a couple of kilos of drugs, of course, is a lot of drugs in a certain sense, but not in terms of the major multinational types of drug conspiracies that are prosecuted in this building. And even though he lost his three points for acceptance of responsibility, he still had guidelines of only 34. He would have had guidelines of 31, which is about nine years in prison. And so in that sense, that's what I meant by, this is not a huge drug case. And so I think that fact combined with the fact that he essentially received no credit, and I am sensitive to the fact that he could have theoretically gotten life for 18 years or 20 years. It could have certainly been worse, but had it been worse for my client, that would have just, I think, strengthened my argument that it was unreasonable. I think even in this situation, it was unreasonable. And really, the only reason why, because anytime someone gets a guidelines sentence, it is presumptively reasonable. But here, he received no credit, I felt, and the judge, I think, was clear in the record, so we don't have to guess that what my client did by jumping bail was worse than had he not cooperated to begin with, for the reasons the district court judge explained. And on that sort of legal factual finding, I just so strongly disagree, because he's essentially gotten zero credit, and even perhaps got a worse sentence than he otherwise would have. The government argued below, perhaps they'll argue the same thing today, that the failed cooperation, I think they used the expression, there was an aggravating factor. So my client, really, according to the judge and the government, would have been better off had he not even cooperated, and just simply pled guilty and jumped bail. And I think, I see possibly they're shaking heads, they may argue that. And I think that is, for me, the crux of the case. And so, if there's no further questions, I'll reserve my rebuttal. Why don't you... Yes. Come on back a moment. How many other defendants were sentenced by Judge Engelmeyer in this case? That I'm aware of, I think there were two other defendants. It's possible there are others whose cases were sealed that I'm unaware of. And what, do you think he was unaware of the differences in the treatment he was according to each of these defendants? No, I think Judge Engelmeyer is an excellent, wonderful judge. He was very aware. I just disagreed with his conclusion that my client's failed cooperation was essentially an aggravating factor that warrants him getting more time as opposed to less time. So, you probably know there are certain adjectives that we employ in dealing with substantive unreasonableness. But one of them stated in the leading case of U.S. v. Vegas is the following, that the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law. And you believe that's the test that you're able to meet here? I'm familiar with that language, but I think in practice, I don't think the Second Circuit itself actually follows that test because I cite two cases on page 6, I think it is, of my brief, the United States v. Dorvey and the United States v. Jenkins. And I think in those cases, which have different facts, and so I'm not saying the facts are the same, but one of the cases, I think it's Dorvey, is a child pornography case where sometimes the court will just say the sentence is too high given the factors here and they omit the shockingly high, shockingly low language. Maybe that's an implicit finding that the sentence is shockingly high or shockingly low. But I think given our sentencing regime, almost no case is actually shocking these days. People get sentences all the time in this building, 30, 40, 50 years for nonviolent crimes. To me, that's shocking, but it's a well-accepted occurrence here. All right. Thank you. Thank you. And you do have a minute for a button, Mr. Chen. Thank you. You may proceed. Mr. Chen. Good afternoon, and may it please the Court. My name is Andrew Chen, and I represent the United States in this appeal as I did during the district court proceedings before Judge Engelmeyer. The defendant's sentence in this case was substantively reasonable, and it was not an abuse of discretion for Judge Engelmeyer to impose a slightly below-guideline sentence in this case, especially given the aggravating factors that were present in this particular sentence. To begin with, the defendant participated for years in a sophisticated drug-trafficking organization that was smuggling kilogram quantities of dangerous drugs like heroin, cocaine, and fentanyl into the United States. We're talking about very serious criminal conduct. Additionally, the defendant immediately after his arrest purported to cooperate with law enforcement and even entered into a cooperation agreement with the government but the record became clear that he was not truly cooperating with law enforcement because he continued to engage in drug-trafficking activity behind the backs of law enforcement. When that double-dealing activity was discovered, the defendant fled and became a fugitive from justice for over six years, revealing that the defendant never had any actual intent to cease his engagement in drug-trafficking activity. Was there any useful information that he provided the government? There was useful information that he provided and we don't dispute that the government used some of that information to arrest other people and to seize drugs off the street. But what was presented to the court at sentencing and what Judge Engelmeyer found is that there were also a series of problems that the defendant's flight from law enforcement created. First of all, a lot of the cases that were charged based on the defendant's assistance were suddenly left in the lurch because one of the key witnesses that was part of the undercover transactions was now suddenly a fugitive.  the government had to expend significant resources trying to track down the defendant and to arrest him after he became a fugitive. And third, other cooperating witnesses that were proactively assisting law enforcement suddenly had to be pulled off the street because the defendant had become a fugitive from justice. I think beyond that, what Judge Engelmeyer found is that this entire record of activity showed that the defendant was a clear and present danger to engage in additional drug trafficking activity in the future. When the defendant was finally arrested six years later, he was engaged in drug trafficking activity in North Carolina. He used a fake name to law enforcement to try to evade detection. And that record sets the defendant apart completely from all these other members of the conspiracy who successfully cooperated with law enforcement, who did not flee, who actually ceased their engagement in drug trafficking activity, and who actually merited a Section 5K1.1 departure motion from the government. And so, ultimately, what the defendant is asking for here is to try to compare apples and oranges. He's talking about sentences that people who actually cooperated and proceeded to sentencing with acceptance of responsibility and successful cooperation with the government and trying to compare that with the defendant who was the exact opposite. A person who was double-dealing with law enforcement who never ceased engagement in law enforcement activity and who was a fugitive for over six years. Let me ask you a question. You mentioned the cost and I know that Judge Engelmeyer said this, so the cost to the government of looking for the defendant while he was on the lam. I just want to be clear, is it the government's position and is it your view of Judge Engelmeyer's statements that that factor, this idea of the cost to the government is relevant here because it counteracts the value of the cooperation or is your argument that that's independently relevant? That a defendant who had no cooperation agreement, no efforts at cooperation but went on the lam and cost the government money in chasing him down, that that would be a factor, that cost, not the obstruction, not the breach of trust, but that cost would be a factor in his sentence or is that limited to cooperation? Yeah. I think from Judge Engelmeyer's  the sentencing record shows that he considered it as part of both. Right? So first, in terms of how to weigh the value of the defendant's cooperation, I think Judge Engelmeyer found that all the problems that were created when the defendant fled from justice, that significantly mitigates the amount of assistance that the defendant actually provided when he became a fugitive. So that's the first part of the analysis. Then, the second part of the analysis is that from the perspective of the Section 3553A factors, the fact that this defendant fled from justice while he was on pretrial release and was pending sentencing for very serious criminal charges and the fact that he engaged in additional criminal activity while he was a fugitive from justice and the pre-sentence investigation report indicated that even though law enforcement was looking for him, he somehow had the capacity to multiple times cross the border back and forth with the Dominican Republic. I think Judge Engelmeyer also found on the Section 3553A factor analysis that the defendant's escape from law enforcement was a separate and independent reason to aggravate. Right.  expressly about the cost to the government of chasing him down, which is one of the three factors that you listed a few minutes ago. And just now, as you've described it, that cost to the government of chasing him down, you described as being relevant only to counterbalancing the value of any cooperation. The second part, what I'm trying to ask is, are you arguing, and do you believe Judge Engelmeyer held, that separate and apart from the diminishment of the value of the cooperation, that the financial and resource cost to the government of looking for a defendant who has gone on the lam is a factor that somehow fits within one of the 3553A factors, again, independent of the cooperation issue? I don't think Judge Engelmeyer was saying that. And as I read the sentencing transcript, I don't think Judge Engelmeyer was making a separate finding about costs going to the Section 3553A analysis. I think what is reflected in the sentencing record is that in evaluating the amount of assistance that was provided to law enforcement as part of this cooperation piece, I think Judge Engelmeyer took into account the fact that the government had to expend significant resources and sacrifice its investigation by pulling other cooperating witnesses and by spending time trying to track down a fugitive who had previously been a cooperator. Thank you. Unless the Court has any additional questions, we're happy to rest on our submission and we would respectfully request that the Court affirm the judgment and conviction. Thank you, Mr. Shan. Mr. Shah. Yes. Thank you. Just very, very briefly. The fact that my client jumped bail cost him two levels of obstruction of justice in the sentencing guidelines. So the sentence guidelines bake in what my client did wrong and he failed to get any credit for what he did right. So the drugs are a certain quantity and he obstructed justice and so he's at a certain level and he gets one month below that level. I think just if I was talking to someone on the street and I would say as simply as possible he just didn't get the break he deserved for the good that he did but he bore the burden of the two points for what he did wrong. And I think that's the heart of what I'm trying to convince you to give him a new sentence. Thank you. Thank you Mr. Shek. I'll take the matter under advisement.